Honorable August B. Landis
United States Bankruptcy Judge

Entered on Docket
June 26, 2026

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ., NBN 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>DIGITAL DOLPHIN PRODUCTS, LLC,<br><br>Debtor. | Case No. 26-11119-abl<br>Chapter 11<br><br><u>Confirmation Hearing</u>:<br>Date: June 10, 2026<br>Time: 1:30 p.m. |

**ORDER CONFIRMING DEBTOR'S SUBCHAPTER V**
**<u>CHAPTER 11 PLAN OF LIQUIDATION</u>**

Digital Dolphin Products, LLC, a Nevada limited liability company, as debtor and debtor in possession (the "<u>Debtor</u>"), having filed its *Subchapter V Chapter 11 Plan of Liquidation* (as amended, the "<u>Plan</u>") [ECF Nos. 66, 134, and 148]; the Court having reviewed and considered the Plan, as well as all matters submitted in support of confirmation; the Court having held hearing on confirmation of the Plan on June 10, 2026 at 1:30 p.m., with all appearances having been noted on the record, and having heard and considered the arguments of counsel at this

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

hearing; the Court having thereafter taken the matter under advisement for an oral ruling issued at a subsequent hearing held on June 17, 2026 at 3:00 p.m., wherein the Court stated its findings of fact and conclusions of law on the record at the hearing, which are incorporated herein by reference in accordance with Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 7052 and 9014; and good cause appearing;

**IT IS HEREBY ORDERED**:

1. The Debtor's Plan is hereby CONFIRMED pursuant to 11 U.S.C. § 1191(b) in the form as attached as **Exhibit 1** and incorporated within this Order.[1] For the avoidance of doubt, the confirmed Plan includes all changes reflected in the Debtor's Notice of Redline [ECF No. 134], its Plan Supplement [ECF No. 148], and those changes and additions are expressly incorporated into the Plan.

2. Pursuant to the exception provided in 11 U.S.C. § 1194(b), the Liquidation Trustee, as successor to the Debtor, shall make all Plan payments, not the Subchapter V Trustee; however, the Subchapter V Trustee shall remain as trustee during the performance of the Plan and continue in his duties in conformance with 11 U.S.C. § 1183, and the provisions of the Plan.

3. The Debtor's counsel and the Subchapter V Trustee shall be entitled to seek allowance and payment of reasonable compensation of fees for services rendered and reimbursement of actual and necessary expenses incurred, pursuant to and consistent with 11 U.S.C. § 330(a)(1), the Federal Rules of Bankruptcy Procedure, the Local Rules, and the U.S. Trustee's Programs Guidelines for Compensation and Reimbursement of Expenses.

4. Within three (3) business days after the occurrence of the Plan's Effective Date, the Debtor shall file a notice of occurrence thereof with the Bankruptcy Court, identifying the Effective Date and indicating that it has occurred.

5. Within fourteen (14) days following substantial consummation of the confirmed Plan, the Debtor shall file, and shall serve on the case or standing trustee, the Office of the

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as in the Debtor's Plan.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

United States Trustee, and all parties in interest a notice of substantial consummation.

6. The Debtor shall timely file all required monthly operating reports and supporting documents through the Plan's Effective Date.

7. The Court reserves jurisdiction over the interpretation, implementation and enforcement of the Plan and this Confirmation Order.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

By: /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
MATTHEW C. ZIRZOW, ESQ., NBN 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

## LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The Court has waived the requirement of approval under LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

| | |
|---|---|
| Nathan Smith (Subchapter V Trustee): | APPROVED |
| Edward M. McDonald, Jr. (Office of the U.S. Trustee): | APPROVED |
| Candace Carlyon (counsel for CalPrivate Bank): | APPROVED |
| David Riggi (counsel for Justin Cotton-Eugene, *et al.*): | NO RESPONSE |

☐ I certify that this is a case under chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

# EXHIBIT 1

| | |
|---|---|
| Debtor name | **Digital Dolphin Products, LLC** |
| United States Bankruptcy Court for the: | **District of Nevada** |
| Case number: | **26-11119-abl** |

☐ Check if this is an amended filing

**SUBCHAPTER V CHAPTER 11 PLAN OF LIQUIDATION**
**OF DIGITAL DOLPHIN PRODUCTS, LLC**

## A. Brief Description and History of the Debtor's Business

### 1. Introduction

The Debtor is a reseller of ink, toner, and other office equipment products that is based in Henderson, Nevada, and previously in Los Angeles, California prior to 2021. The Debtor's California predecessor was originally organized on October 12, 2006 under the name Digital Dolphin Supplies, LLC, and thus has been in business for nearly twenty (20) years. In 2021, this California entity was renamed Digital Dolphin Products, LLC, and around that same time, a company by the same name with similar ultimate ownership was organized in Nevada for Nevada-based operations, although the companies operated as a single integrated enterprise On February 23, 2026, the California and Nevada entities merged. The Debtor is owned by Digital Dolphin Global, LLC, a Delaware limited liability company, which entity is in turn, is owned and controlled by Joseph Hiller, Gerald Chamales, and Alan Jacobs.

On February 23, 2026 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Code"), thus commencing its bankruptcy case (the "Chapter 11 Case"). The Debtor elected to proceed under Subchapter V of chapter 11, and thus is permitted to continue operating its business and managing its financial affairs as a debtor in possession. Nathan F. Smith has been appointed as Subchapter V Trustee (the "Subchapter V Trustee") in the case.

The Debtor filed for bankruptcy to address a $2 million secured loan owed to CalPrivate Bank, a $150,000 Economic Injury Disaster Loan ("EIDL") borrowed from the U.S. Small Business Administration (the "SBA") during the COVID-19 pandemic, about $1.4 million in general unsecured trade debts owed to various vendors, and several pending litigations in Los Angeles County Superior Court.

### 2. The Creditors

**(a) SBA.**

On September 8, 2020, the Debtor, as borrower, and the SBA, as lender, entered into a Loan Authorization and Agreement for the EIDL in the principal amount of $150,000, which required monthly payments of $731 per month commencing in September 2021, and had an interest rate of 3.75% per annum. The EIDL was evidenced by a Note, and the obligation was secured by a Security Agreement, which pledged a security interest in substantially all of the Debtor's personal property to secure repayment of the SBA Note. On September 17, 2020, the SBA filed a UCC-1 financing statement against the Debtor to perfect its security interest. As of September 17, 2025, however, the SBA's security interest lapsed as it did not file any renewal within five (5) years. As of the Petition Date, the Debtor presently owes the SBA not less than $150,000.

**(b) CalPrivate Bank**

On November 18, 2020, the Debtor, as borrower, entered into a Business Loan Agreement with CalPrivate

Bank, as lender, for a revolving line of credit up to the principal sum of $2 million, which had a maturity date of one (1) year later, and thus November 18, 2021, and had an interest rate of Prime plus 1%. The CalPrivate loan was evidenced by a Promissory Note, and the obligation was secured by a Security Agreement, which pledged a security interest in substantially all of the Debtor's personal property to secure repayment of the CalPrivate Loan. The Debtor's three (3) individual indirect owners listed above also personally guaranteed the CalPrivate Loan.

On November 20, 2020, CalPrivate Bank filed a UCC-1 financing statement to perfect its security interest. Additionally, after the Debtor's name change from "Supplies" to "Products" in 2021, CalPrivate Bank timely filed an amendment to its financing statement on November 9, 2021. Finally, on November 20, 2025, CalPrivate Bank filed a continuation statement, thus continuing its perfected status.

The parties entered into four (4) Change in Terms Agreements to extend the maturity date of the CalPrivate Bank Loan in 2021, 2023, 2024, and then also in 2025. Most recently, on November 10, 2025, the parties entered into a Change in Terms Agreement, which extended the maturity date to February 18, 2026.

As of the Petition Date, the Debtor owes CalPrivate Bank not less than $2 million under the CalPrivate Loan. Additionally, given the lapse in the SBA's security interest by its failure to timely renew its security interest, CalPrivate Bank is in senior secured position in and to substantially all of the Debtor's assets.

**(c) Unsecured Creditors**

Finally, the Debtor also owes about $1.4 million in unsecured trade debt. Additionally, the Debtor is also a defendant in several litigations pending in Los Angeles County Superior Court: (1) on or about January 5, 2021, Justin Cotton, on behalf of himself and those similarly situated, and Quire Office Products, LLC, filed a class action, Case No. 21STCV00223, against the Debtor asserting claims for allegedly unpaid employee commissions and seeking to invalidate the non-disclosure and non-solicitation provisions of their employment agreements for account executives; and (2) on January 2, 2026, Elizabeth Singleton, as plaintiff, a former employee, filed a similar action as Case No. 26STCV00095 against the Debtor, which case had not proceeded beyond the original filing of the complaint as of the Petition Date.

Although the claim at issue in these litigations are disputed and unliquidated, the Debtor lacks the financial ability to pay California counsel to attend lengthy and expensive trials or continue litigating those matters. Additionally, the Debtor is past maturity on its CalPrivate Loan and in default under its EIDL with the SBA, and thus given its financial situation, it had no other reasonable choice but to seek bankruptcy protection to address its situation and try to maximize the remaining value of its assets for the benefit of creditors.

**B. The Chapter 11 Case**

**1. Initial Filings**

On the day after its Petition Date, the Debtor filed emergency motions with the Court seeking: (i) approval of the use of cash collateral pursuant to a budget and subject to making adequate protection payments to CalPrivate Bank of $13,250 per month (the "Cash Collateral Motion"); (ii) authorization to pay pre-petition amounts owed to employees for wages and related items (the "Employee Wage Motion"). The Court approved the foregoing matter on an emergency, interim basis by orders entered on February 27, 2026, and scheduled a final hearing on them for May 12, 2026.

With respect to the Cash Collateral Motion, the Debtor and CalPrivate Bank negotiated a revised agreement shortly before the final hearing, which the Court approved by order entered on April 6, 2026. This final cash collateral order providing that in exchange for a total revised adequate protection payment of $25,000 immediately, the Debtor would be permitted to continue to use cash collateral in accordance with its existing budget for a period of an additional three (3) weeks, and thus through and including April 22, 2026. The Court also entered a final order approving the Debtor's Employee Wage Motion on a final basis as well.

On February 24, 2026, the Court entered an *Order Setting (A) Status Conference; (B) Claims Bar Date; (C) Deadline for Election Under 11 U.S.C. § 1112(b)(2); and (D) Other Deadlines* (the "Subchapter V Order"), which set certain deadlines in the Chapter 11 Case, which are incorporated into this Plan by reference, including a status hearing for April 22, 2026.

On the Petition Date, the Debtor filed an application to employ the law firm of Larson & Zirzow, LLC as its bankruptcy counsel, which is set for hearing before the Court on April 8, 2026.

On March 9, 2026, as may be later amended, the Debtor filed its bankruptcy *Schedules* (the "Schedules") and *Statement of Financial Affairs* ("SoFA").

The Debtor's § 341(a) first meeting of creditors was scheduled for March 26, 2026 and has been continued several times for additional questions.

**2. The Sale Motion**

On April 3, 2026, the Debtor filed a motion (the "Sale Motion") seeking approval to sell substantially all of its assets pursuant to § 363 of the Code, free and clear of any and all liens claims and encumbrances, as well as to assume assign various executory contracts and unexpired leases to Coast 2 Coast Computer Products, Inc., or its designee (the "Buyer") for a total purchase price of $2.2 million. The Court has set a hearing on the Sale Motion for April 21, 2026. The Sale Motion proposes to pay the allowed secured claim of CalPrivate Bank in full immediately at closing, and with the remainder of the sale proceeds held pending approval of and distribution pursuant to this Plan. The Sale Motion is intended to be approved pursuant to a Sale Order (the "Sale Order").

**3. Claims Matters**

On April 6, 2026, CalPrivate Bank filed its Proof of Claim, Claim No. 11, which asserted a total claim of not less than $2,136,300.83, which included principal of $2 million, interest of $14,500, late fees of $120,800.83, and attorney's fees and costs, which fees and costs asserted through March 31, 2025 were $20,941.52, plus additional amounts as may be incurred and which continue to accrue thereafter. On April 17, 2026, the Debtor filed a *Motion to Approve Settlement Agreement with CalPrivate Bank Pursuant to Fed. R. Bankr. P. 9019* (the "CalPrivate Settlement Motion") which seeks court approve of a settlement agreement to resolve CalPrivate Bank's Proof of Claim, including an eliminate of the late fees, but the allowance of its principal, default interest, and attorney's fees and costs.

On April 15, 2026, the Debtor and the SBA entered into a *Stipulation By and Between the Debtor and the U.S. Small Business Administration Regarding Classification of Claims* (the "SBA Stipulation"), pursuant to which the parties agreed that due the lapse in the SBA's perfected status, and thus that its security interest was avoidable pursuant to the "strongarm" powers in § 544(a) of the Code, the parties agreed that the SBA would have no secured claim in the case, and instead only have a general unsecured claim of not less than $150,000.

Finally, the deadline for all creditors (other than governmental units) to file proofs of claim in this case is May 4, 2026, and the deadline for all creditors that are governmental units is August 24, 2026. To date, as of the filing of this Plan, various governmental units have filed claims for taxes allegedly owed, and many of which have claimed are priority claims pursuant to § 507(a)(8) of the Code. In particular, although the following examples are by no means exhaustive, to date the following priority tax claims have been filed: (1) Missouri Department of Revenue for $3,928.03, Claim No. 1; (2) Massachusetts Department of Revenue for $12,549.46, Claim No. 9; and (3) Indiana Department of Revenue for $7,103. Additionally, there may be additional governmental units that file additional claims hereafter. The Debtor believes that many of these filed claims are "estimated" claims and without any actual support, or otherwise should be disallowed in whole or in part. Accordingly, the Debtor may need to file objections to the allowance of these claims as well.

### 4. Plan Procedures Order

At the same time the Debtor filed this Plan, it also filed an *Ex Parte Motion Re: Fixing of Deadlines and Procedures in Subchapter V Case Related to Proposed Chapter 11 Plan* (the "Procedures Motion"), which it expects the Court will grant via order (the "Procedures Order"). The Procedures Order will approve certain procedures related to the Plan, including the scheduling of a confirmation hearing on the Plan and various other deadlines in relation thereto, including the setting of a deadline to file objections to confirmation of the Plan, and any evidence or declarations in support of the same, the deadline for all eligible creditors to vote on the Plan, and the deadline for the Debtor to respond to any objections to confirmation of the Plan and to file a ballot summary certifying the votes on the Plan. ***Creditors should refer to this Procedures Order and the Subchapter V Order for important dates and deadlines applicable to this Plan.***

## C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a hypothetical chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit 1**.

## D. Ability to make future plan payments

The Debtor must also show that it will have enough cash over the life of the Plan to make the required payments under this Plan. The Debtor is not providing any Projections for its Plan because, as of the Confirmation Hearing on this Plan, the Debtor anticipates having closed on the sale of substantially all of its assets to the Buyer, and thus will no longer be operating in its current form; rather, this is a plan liquidation to distribute the net remaining sale proceeds.

## Article 1: Summary

This Plan of Liquidation (the "Plan") under chapter 11 of the Code provides for: **1** class of priority claims;

**2** classes of secured claims;
**1** class of non-priority unsecured claims; and
**1** class of equity security holders.

This Plan also provides for the payment in full of Allowed administrative and priority claims. All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** ...................... | All Allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). |
| 2.02 | **Class 2** ...................... | The claim of CalPrivate Bank to the extent Allowed as secured claims under § 506 of the Code. |

| | | |
|---|---|---|
| 2.03 | **Class 3 ........................** | The claim of any other secured claims to the extent Allowed as a secured claim under § 506 of the Code. This class includes any other claim, *other than* as specified in Class 2 that is secured by a lien on property in which the Debtor's bankruptcy estate has an interest, which lien is valid, perfected, and enforceable. If there are multiple secured claims in this class, then they shall each be considered in their own separate subclass. |
| 2.04 | **Class 4 ........................** | All non-priority general unsecured claims Allowed under § 502 of the Code. |
| 2.05 | **Class 5 ........................** | All equity interests in the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under § 1123(a)(1) of the Code, administrative expense claims and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim Allowed under § 503 of the Code will be paid in full, in cash, over time pursuant to § 1191(e) of the Code, as follows: (1) Any professionals holding retainers may apply such funds to the payment of any Allowed fees and costs; and (2) Any remaining unpaid professional fee claims and other administrative claims shall be paid in full within three (3) days of the entry of a final order allowing such claim.<br><br>Except as otherwise ordered by the Court prior to the confirmation hearing on the Plan, the deadline for filing requests for allowance of administrative expense claims shall be thirty (30) days after the occurrence of the Effective Date (the "Administrative Claims Bar Date"). In the event any request for allowance of an administrative expense claim is not filed timely, then it shall be forever barred and unenforceable. |
| 3.03 | **Priority tax claims** | All Allowed priority tax claims (excluding penalties) will be paid their *pro rata* share of any remaining cash on hand after payment in full of all Administrative Claims, and Allowed Claims in Classes 1 and 2, with the timing of any distributions within the sole and exclusive discretion of the Liquidating Trustee, but in any event no later than five (5) years after the Petition Date. |
| 3.04 | **Statutory fees and quarterly fees** | Not applicable pursuant to 28 U.S.C. § 1930(a)(6)(A). |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 - Priority claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | Each holder of a Class 1 Allowed priority claim pursuant to § 507 of the Code (excluding the priority tax claims addressed in Article 3.03) will be paid in full, in cash upon the later of the Effective Date of this Plan, or the date on which such claim is allowed by a final non-appealable order. Class 1 is unimpaired, and thus is deemed to accept the Plan, and is not entitled to vote on the Plan. |
| **Class 2 – Secured Claim of CalPrivate Bank** | ☒ Impaired<br>☐ Unimpaired | Each holder of a Class 2 Allowed secured claim shall: (a) retain any liens it may have securing its Allowed secured claim related to its collateral; and (b) receive payment in full in cash of such claim. Class 2 is impaired and is entitled to vote on the Plan.<br><br>The Debtor anticipates CalPrivate Bank will be paid in full immediately after the closing pursuant to the Sale Motion, and in accordance with the CalPrivate Settlement Agreement, thus that CalPrivate Bank will not have any remaining claim as of the confirmation hearing, and thus that this will be a vacant class |
| **Class 3 – Other Secured Claims** | ☒ Impaired<br>☐ Unimpaired | Each holder of an Allowed secured claim (other than in Class 2) shall: (a) retain any liens it may have securing its Allowed secured claim relating to its collateral; and (b) receive payment in full in cash of such claim. Class 4 is impaired and is entitled to vote on the Plan.<br><br>The Debtor does not believe there are any creditors with allowed claims in this class, and thus anticipates that this will be a vacant class. |
| **Class 4 – Non-Priority General Unsecured Claims** | ☒ Impaired<br>☐ Unimpaired | Each holder of an Allowed general unsecured, non-priority claim in Class 4 shall receive its *pro rata* share of any remaining funds after the payment in full of all administrative claims, all priority tax claims, all priority non-tax claims (Class 1), and all other secured claims (Class 4). These timing of these payments shall be made in the Liquidation Trustee's sole and absolute discretion. Class 5 is impaired and is entitled to vote on the Plan. |
| **Class 5 – Equity security holders of the Debtor** | ☒ Impaired<br>☐ Unimpaired | The Holders of Class 5 Equity Interests shall be cancelled and they shall not receive any recovery in this case. Class 5 is impaired and is deemed to reject the Plan, and is not entitled to vote on it. |

4.02 **Elimination of Vacant Classes** Any class of claims that is not occupied as of the date of the commencement of the confirmation hearing by an Allowed claim or a claim temporarily Allowed under Fed. R. Bankr. P. 3018 shall be deemed eliminated for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such class.

| | **Article 5: Allowance and Disallowance of Claims** | |
|---|---|---|
| 5.01 | **Allowed** | "Allowed" means, with respect to any claim, or any portion thereof, except as otherwise provided herein: (a) a claim that is evidenced by a Proof of Claim filed by the Bar Date or a request for payment of an administrative claim filed by the Administrative Claims Bar Date, as applicable; (b) a claim that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely filed; or (c) a claim that is Allowed pursuant to this Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a claim described in clauses (a) and (b) above, such claim shall be considered Allowed only if and to the extent that with respect to such claim no objection to allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by this Plan, the Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a final order. Unless otherwise specified in this Plan or in an order of the Bankruptcy Court allowing such Claim, "Allowed" in reference to a Claim shall not include: (1) any interest on the amount of such claim accruing from and after the Petition Date; (2) any punitive or exemplary damages; (3) any fine, penalty or forfeiture; or (4) any attorneys' fees and expenses. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no claim of any entity subject to § 502(d) of the Code shall be deemed Allowed unless and until such entity pays in full the amount that it owes the Debtor. For the avoidance of doubt, a Proof of Claim filed after the Bar Date or a request for payment of an Administrative Claim filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a final order allowing such late-filed claim. |
| 5.02 | **Disputed** | "Disputed" means, with respect to any claim, or any portion thereof, that is not yet Allowed, including (a) any claim evidenced by a Proof of Claim that, on its face, is contingent or unliquidated; (b) any Claim that is subject to an objection filed within 60 days of the entry of the Confirmation Order per LR 3007.1, but without prejudice to the Liquidation Trustee's ability to seek an extension thereof for cause shown, or a request for estimation, in each case that has not been withdrawn, resolved, or ruled on by a final order of the Bankruptcy Court; (c) any Claim scheduled by the Debtor as contingent, unliquidated or disputed, (d) any claim evidenced by a Proof of Claim which amends a claim scheduled by the Debtor as contingent, unliquidated or disputed, and (e) any claim that is not an Allowed Claim or a Disallowed Claim. |
| 5.03 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a Disputed Claim unless such claim is Allowed by a final non-appealable order. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

The Debtor **rejects** all executory contracts and unexpired leases as of the Effective Date, that have not already been assumed and assigned pursuant to the Court's Order Granting Motion to Sell [ECF No. 110] entered on May 13, 2026, and set forth in the Asset Purchase Agreement on file in the case. Except as otherwise ordered by the Court prior to the confirmation hearing, any proof of a claim arising from the rejection of an executory contract or unexpired lease under the Plan must be filed no later than 30 (thirty) days after the date of entry of the order confirming this Plan, or it will be forever barred. The entry of the confirmation order on this Plan shall constitute an order approving the assumptions and rejections herein pursuant to § 365 of the Code and as of the Effective Date. The Debtor reserves the right to amend this list to add or subtract executory contracts and unexpired leases through the confirmation hearing on the Plan.

## Article 7: Means for Implementation of the Plan

This Plan puts in place a Liquidating Trustee to administer remaining Assets to be distributed to creditors, including cash on hand as of the Plan's Effective Date, and generated from the future recoveries, if any, that may be generated by the Liquidating Trustee.

## Article 8: General Provisions

8.01 **Definitions and Rules of Construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

1. "Assets" means mean all assets of the Debtor, including, without limitation, all real, personal, tangible and intangible property of the Debtor, except as sold pursuant to the Sale Order, and the accompanying Asset Purchase Agreement attached to the Sale Motion.

2. "Avoidance Actions" means causes of action arising under §§ 502, 510, 541, 544, 545, 547, 548, 549, 550, 551, or 553 of the Code, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

3. "Bar Date" means the deadline for all creditors (other than governmental units), to file proofs of claim in this case is May 4, 2026, except with respect to claims that were scheduled by the Debtor in its Schedules as undisputed, non-contingent, and liquidated. For creditors that are governmental units, the deadline to file proofs of claim is August 24, 2026.

4. "Causes of Action" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case now owned or hereafter acquired by the Debtor and/or its estate, and in each case, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort,

| | | |
|---|---|---|
| | | in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.<br><br>5. "Confirmation Order" means a Final Order of the Bankruptcy Court confirming this Plan pursuant to §§ 1129 and 1191 of the Code. |
| 8.02 | **Effective Date** | The effective date of this Plan (the "Effective Date") is the first business day after 14 days after the entry of the confirmation order on this Plan. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or terminates. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provisions herein. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of their successors or assigns. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate Governance** | All of the Debtor's existing management shall be deemed to have resigned immediately as of the Plan's Effective Date, and the Subchapter V Trustee shall be appointed a Liquidating Trustee over the remainder of the case. |
| 8.08 | **Retention of Jurisdiction** | Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the case for, among other things, the following purposes:<br><br>1. to hear and determine all matters relating to the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts and claims resulting therefrom;<br><br>2. to hear and determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the entry of the Confirmation Order;<br><br>3. to Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any claim against the Debtor, including the resolution of any request for payment of any claim and the resolution of any and all objections to the secured or unsecured status, priority, |

amount, or allowance of claims;

4. to ensure that distributions to holders of Allowed claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan;

5. to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under §§ 330 or 503 of the Code;

6. to hear and determine any application to modify this Plan in accordance with § 1127 of the Code, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

7. to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

8. to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or entity with the occurrence of the Effective Date or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court, except as otherwise provided herein;

9. to issue orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan;

10. to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

11. to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Code;

12. to determine any other matters that may arise in connection with or are related to this Plan or the Confirmation Order;

13. to resolve any disputes concerning whether a person or entity had sufficient notice of the bankruptcy case, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a claim is discharged hereunder, or for any other purpose;

14. to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the this case (whether or not the case has been closed);

15. to hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

16. to hear and determine any rights, claims or Causes of Action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

17. to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the case with respect to any Person;

18. to hear any other matter related to this Plan and not inconsistent with the Bankruptcy Code; and

19. to enter a Final Decree closing the bankruptcy case.

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a) of the Code, then the Debtor will not receive a discharge.

If the Debtor's Plan is confirmed under § 1191(b) of the Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due as otherwise provided in § 1192 of the Code.

## Article 10: Other Provisions

1. Disallowance of Claims Not Allowed and Tardy Proofs of Claim. The occurrence of the Effective Date shall operate to disallow and expunge any claims of any creditor who received actual notice of the Chapter 11 Case and that: (a) were not listed in the Debtor's bankruptcy Schedules and for which no proof of claim was filed on or prior to the Bar Date; (b) were listed on the Debtor's Schedules as disputed, contingent or unliquidated, and for which no proof of claim was filed by the Bar Date; (c) are the subject of a proof of claim for a pre-petition claim that was timely filed after the Bar Date. The disallowance of a claim pursuant shall also expunge any allege lien associated with such claim, if any.

2. Binding Effect. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, except in accordance with the Plan.

3. Local Rule 3022 Inapplicable. Local Rule 3022 shall not apply to this Debtor or this Plan, and thus this Chapter 11 Case will not be deemed fully administered 180 days after Plan confirmation, and thus the Clerk shall not enter a final decree without further notice pursuant to that Local Rule. A final decree and/or order closing this Case shall not be entered unless and until an affirmative motion for final decree is filed by the Debtor, the U.S. Trustee and interested parties are provided with sufficient notice and an opportunity to be heard and an order granting the motion for final decree is entered by the Court.

4. Notice of Substantial Consummation and Effective Date. Pursuant to § 1183(c)(2) of the Code, not later than 14 days after the Debtor's Plan is substantially consummated, the Debtor shall file with the Court and serve on the U.S. Trustee, Subchapter V Trustee, and all creditors and parties in interest notice of substantial consummation. Within two (2) business days of the occurrence of the Effective Date, the Debtor shall file a Notice of Occurrence of the Effective Date with the Bankruptcy Court, identifying the Effective Date and indicating that it has occurred.

5. Professional Compensation. The Debtor's counsel and the Subchapter V Trustee shall be entitled to reasonable compensation of fees for services rendered and reimbursement of actual and necessary expenses incurred through the Plan's Effective Date, pursuant to § 330(a)(1) of the Code, the Federal Rules of Bankruptcy Procedure, and the U.S. Trustee's Programs Guidelines for Compensation and Reimbursement of Expenses.

6. No Third-Party Release. No provision or language in this Plan constitutes a non-consensual, non-debtor, third party release.

7. Monthly Operating Reports. The Debtor shall timely file all required monthly operating reports through the Plan's Effective Date.

8. Entire Agreement. This Plan and the exhibits hereto set forth the entire agreement and understanding of the parties and supersede all prior discussions and documents. No party hereto shall be bound by or may rely on any terms, conditions, definitions, understandings or representations with respect to the subject matter hereof, other than as in expressly provided herein or in the confirmation order approving this Plan.

## Article 11: Liquidating Trustee Provisions

1. Definitions. The following terms shall have the following definitions:

   (a) "Liquidation Trust" means the Liquidation Trust established pursuant to this Plan and the Liquidation Trust Agreement.

   (b) "Liquidation Trust Agreement" means the Liquidation Trust Agreement, as may be amended, supplemented, restated, or otherwise modified from time to time pursuant to the terms thereof, in the form as attached as **Exhibit A**.

   (c) "Liquidation Trust Assets" means all collections, avoidance actions that have not already been settled as of the Effective Date, any property of the Debtor or its estate as of the Effective Date (excepting and excluding therefrom any professional retainers paid to Debtor's counsel), all other Causes of Action, which are property of the Debtor's or its estate as of the Effective Date, all other assets of the Debtor and its estate to be liquidated through this Plan.

   (d) "Liquidation Trustee" means Brian D. Shapiro, or any successor thereto.

2. Establishment of Liquidation Trust. On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and, in its capacity as Liquidation Trustee, accept all Assets on behalf of the beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Assets not in the Liquidation Trustee's possession. The Liquidation Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date. The Liquidation Trust shall be established for the purposes of, *inter alia*, (i) liquidating any non-cash Assets; (ii) prosecuting and resolving the Causes of Action; (iii) challenging and resolving Disputed Claims; and (iv) maximizing recovery of the Assets for the benefit of the beneficiaries thereof, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidation Trust.

3. Appointment of the Liquidation Trustee. Brian D. Shapiro shall be appointed as Liquidation Trustee. Following appointment, the Liquidation Trustee shall act in accordance with this Plan, Liquidation Trust Agreement, and Confirmation Order, and in such capacity shall have the same powers as the boards of members and officers of the Debtor, subject to the provisions hereof (and all bylaws, articles of incorporation and related corporate documents are deemed amended by this Plan to permit and authorize the same). The Liquidation Trustee may be removed for cause by the Bankruptcy Court after notice and hearing commenced by any creditor with an Allowed Claim or other right of payment under this Plan. In the event of resignation or removal, death or incapacity of the Liquidation Trustee, the Office of the U.S. Trustee shall designate another person or entity to serve as Liquidation Trustee and thereupon the successor Liquidation Trustee, without any further act or need for an order of the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor; *provided*, *however*, that the Liquidation Trustee shall be deemed removed on the date the case is closed, and no successor thereto shall be designated. The Liquidation Trustee and its professionals shall be entitled to compensation payable from the Liquidation Trust.

4. Beneficiaries of the Liquidation Trust. Holders of Allowed Claims entitled to distributions shall be the beneficiaries of the Liquidation Trust. Such beneficiaries shall be bound by the Liquidation Trust Agreement. The interests of the beneficiaries in the Liquidation Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

5. Vesting and Transfer of Assets to the Liquidation Trust. Pursuant to § 1141(b) of the Code, the Assets, other than the Assets included in the Sale Order, shall vest in the Liquidation Trust, free and clear of all Liens, claims and interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; *provided*, *however*, that the Liquidation Trustee may abandon or otherwise not accept any non-cash assets that the Liquidation Trustee believes, in good faith, have no value to the Liquidation Trust. Any non-cash assets that the Liquidation Trustee so abandons or otherwise does not accept shall not be property of the Liquidation Trust.

6. Liquidation Trust Expenses. Subject to the provisions of the Liquidation Trust Agreement, all costs, expenses and obligations incurred by the Liquidation Trustee, including professional fees, in administering this Plan and the Debtor's estate, and/or maintaining and administering the Liquidation Trust shall be a charge against any Liquidation Trust Assets.

7. Role of the Liquidation Trustee

(a) Exclusive Trustee. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust and the Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include, without limitation, the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Assets; (b) pay taxes or other obligations incurred by the Liquidation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of Assets; (d) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement, Causes of Action vested in the Liquidation Trust; (e) object to, challenge, negotiate, or settle any Disputed Claims; (f) dissolve the Debtor and any subsidiaries of the Debtor; (g) recover any Assets for the benefit of the Liquidation Trust, including, but not limited to, accounts receivable of the Debtor, (h) abandon any Assets of the Liquidation Trust that it deems to be burdensome or of inconsequential value; and (i) undertake all administrative functions of this Plan, including the ultimate closing of the Debtor's Chapter 11 Case. The Liquidation Trustee is the successor to the Debtor and its Estate.

(b) Possession of Books and Records. On the Effective Date, the Liquidation Trustee shall: (a) take possession of all books, records, and files of the Debtor and its estate; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trustee determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or required.

(c) Investment of Cash. The Liquidation Trustee may invest cash (including any earnings thereon or proceeds therefrom) as permitted by § 345 of the Code or in other prudent investments; *provided*, *however*, that such investments are permitted to be made by a liquidation trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

(d) Tax Returns. The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Liquidation Trust also shall annually (for tax years in which distributions from the Liquidation Trust are made), send to each beneficiary a separate statement setting forth the beneficiary's share of item income, gain, loss, deduction or credit and all such holders shall report such items on their federal income tax returns; *provided*, *however*, that no such statement need be sent to any Class that is not expected to receive any distribution

from the Liquidation Trust. The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidation Trust's beneficiaries in accordance with their relative beneficial interests in the Liquidation Trust. As soon as practicable after the Effective Date, the Liquidation Trust shall make a good faith valuation of assets of the Liquidation Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidation Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any governmental unit for taxing purposes. The Liquidation Trustee may request an expedited determination of taxes of the Debtor or of the Liquidation Trust under § 505(b) of the Code for all tax returns filed for, or on behalf of, the Debtor and the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust. The Liquidation Trustee shall be responsible for filing all federal, state, and local tax returns for the Debtor and the Liquidation Trust. The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidation Trustee shall be subject to any such withholding and reporting requirements.

(e) Allowed Tax Obligations. The Liquidation Trust shall be responsible for payments of all Allowed tax obligations of the Debtor, and any taxes imposed on the Liquidation Trust.

8. Preservation of Right to Conduct Investigations. The preservation for the Liquidation Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtor prior to the Effective Date shall vest with the Liquidation Trust and shall continue until dissolution of the Liquidation Trust.

9. Prosecution and Resolution of Causes of Action. From and after the Effective Date, prosecution and settlement of all Causes of Action transferred to the Liquidation Trust shall be the sole responsibility of the Liquidation Trustee pursuant to this Plan and the Confirmation Order. From and after the Effective Date, the Liquidation Trustee shall have exclusive rights, powers, and interests of the Debtor's estate to pursue, settle or abandon such Causes of Action as the sole representative of or successor to the Debtor's estate pursuant to § 1123(b)(3) of the Code. Proceeds recovered from all Causes of Action will be deposited into the Liquidation Trust and will be distributed by the Liquidation Trustee to beneficiaries in accordance with the provisions of this Plan. All Causes of Action that are not expressly released or waived under this Plan are reserved and preserved and vest in the Liquidation Trust in accordance with this Plan. No Person may rely on the absence of a specific reference in this Plan to any Cause of Action against it as any indication that the Debtor or Liquidation Trustee will not pursue any and all available Causes of Action against such person or entity, except as otherwise provided in this Plan. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or substantial consummation of this Plan, except as otherwise provided in this Plan. No Causes of Action that have been otherwise released or exculpated shall be transferred to the Liquidation Trust; the Liquidation Trustee shall not have standing to pursue such claims or released or exculpated Causes of Action, and all such released or exculpated claims and Causes of Action shall be waived, released and discharged pursuant to this Plan. The Debtor's inclusion of, or failure to include, any right, action or claim herein shall not be deemed an admission, denial or waiver of any claims, demands, rights or Causes of Action that the Liquidation Trust may hold against any entity, and all entities are hereby notified that all such claims, demands, rights or Causes of Action are preserved, except as otherwise provided in this Plan.

10. Federal Tax Treatment of the Liquidation Trust for the Assets. For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidation trust under section 301.7701-4 of the Treasury Regulations and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Debtor; estates of an undivided interest in each of the Assets (to the extent of the value of their respective share in the applicable Assets)

and then contributed such interests to the Liquidation Trust, and the Liquidation Trust's beneficiaries will be treated as the grantors and owners thereof.

11. Limitation of Liability. No recourse will ever be had, directly or indirectly, against the Liquidation Trustee, and his professionals, representatives, agents, successors or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidation Trustee under this Plan or by reason of the creation of any indebtedness by the Liquidation Trust or the Liquidation Trustee under this Plan. All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Assets. The Liquidation Trustee and his agents shall not be deemed to be the agent for any holder of a Claim in connection with distributions made under this Plan. The Liquidation Trustee, and its professionals, representatives, agents, successors or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their sound judgment; *provided*, *however*, that this section will not apply to any specific act where the Bankruptcy Court determines in a Final Order that the action or inaction was grossly negligent or the result of willful misconduct. No such person shall be liable for any action or inaction of another person.

12. Term of Liquidation Trust. The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (i) all of the Assets have been liquidated, (ii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled, and (ii) the Debtor's case has been closed.

13. Retention of Professionals. Subject to the terms of this Plan and Confirmation Order to the extent they address the treatment and payment of Professional Fees incurred prior to the Effective Date, the Liquidation Trustee may retain and compensate attorneys and other professionals to assist in their duties on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate without Bankruptcy Court approval. Upon the appointment of the Liquidation Trustee, any professionals retained by the Debtor shall no longer be obligated or required to continue to represent the Debtor after the Effective Date (unless such professionals have agreed in writing to continue such representation) and, if such professional elects to withdraw from such representation, such professional shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Subchapter V Case and the confirmation of this Plan. The confirmation of this Plan shall constitute any necessary consent and court approval to withdraw from such representation.

14. Conflicts Between Liquidation Trust Agreement and Plan. In the event of any direct conflicts between the express terms of the Liquidation Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

15. Books and Records. As part of the appointment of the Liquidation Trustee, to the extent not already transferred on the Effective Date, the Debtor shall transfer dominion and control over all of its books and records to the Liquidation Trustee in whatever form, manner or media those books and records existed immediately prior to the transfer thereof to the Liquidation Trustee. The Liquidation Trustee may abandon all such books and records upon the closing of this Chapter 11 Case. Pursuant to § 554 of the Code, this Plan shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the books and records of the Debtor.

16. Preservation of Causes of Action.

(1) Vesting of Causes of Action

i. Except as otherwise provided in this Plan or Confirmation Order, in accordance with § 1123(b)(3) of the Code, any Causes of Action that the Debtor and the estate may hold against any entity shall vest in the Liquidation Trust on and after the Effective Date.

ii. Except as otherwise provided in this Plan or Confirmation Order, after the Effective Date, the Liquidation Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action that were held by the Debtor and the estate, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Subchapter V Case.

(2) Preservation of All Causes of Action Not Expressly Settled or Released

i. Unless a Cause of Action against a holder or other entity is expressly waived, relinquished, released, compromised or settled in this Plan or any final order (including the Confirmation Order) of the Bankruptcy Court, the Debtor and its estate expressly reserve such Cause of Action for later adjudication or administration by the Liquidation Trustee (including, without limitation, Causes of Action not specifically identified or described in this Plan or elsewhere or of which the Debtor or the Subchapter V Trustee may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor or the Subchapter V Trustee at this time or facts or circumstances which may change or be different from those the Debtor or the Subchapter V Trustee now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Plan or Confirmation Order, except where such Causes of Action have been released in this Plan or any other Final Order (including the Confirmation Order). In addition, the Debtor and its estate expressly reserve the right of the Liquidation Trustee to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

ii. Subject to the immediately preceding paragraph, any entity to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidation Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such entity has filed a proof of claim against the Debtor in the Subchapter V Case; (ii) the Debtor has objected to any such entity's proof of claim; (iii) any such entity's claim was included in the Schedules; (iv) the Debtor has objected to any such entity's scheduled claim; or (v) any such entity's scheduled claim has been identified by the Debtor as disputed, contingent or unliquidated.

17. Liquidation Trustee to Make Distributions. Pursuant to § 1191(c), unless ordered otherwise in the Confirmation Order, the Liquidation Trustee shall make all payments and distributions required by this Plan. The Liquidation Trustee shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform his duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent him with respect to his responsibilities (as applicable); and (d) exercise such other powers as may be vested in the Liquidation Trustee by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Liquidation Trustee to be necessary and proper to implement the provisions hereof. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Liquidation Trustee on or after the Effective Date (including taxes) and any reasonable compensation and out of pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Liquidation Trustee shall be paid in cash by the Liquidation Trust.

18. Quarterly Reports. In no event later than ninety (90) days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all cash in the Liquidation Trust has been provided for distributions in accordance with this Plan, the Liquidation Trustee shall file with the Bankruptcy Court a report

setting forth the amounts, recipients and dates of all distributions made by the Liquidation Trustee under this Plan through each applicable reporting period.

19. Method of Payment. Unless otherwise expressly agreed in writing, payments of cash under this Plan shall be made by a check drawn on a domestic bank, ACH transfer, or an electronic wire. Whenever any payment, distribution, filing, delivery, or notice to be made under this Plan is due on a day other than a business day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following business day.

20. Objections to and Resolution of Claims. The Liquidation Trustee shall have the right to file objections to claims after the Effective Date. All objections shall be litigated to entry of a Final Order; *provided*, *however*, that only the Liquidation Trustee has the authority to compromise, settle, otherwise resolve, or withdraw any objections without approval of the Bankruptcy Court.

21. Disputed Claims. Notwithstanding any other provision of this Plan, no payment or distribution of cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan. On any date that distributions are to be made under the terms of this Plan, the Liquidation Trustee shall deposit in one or more segregated accounts, cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. Such cash shall be provided by the Liquidation Trust. The Liquidation Trustee shall also segregate any interest, dividends, or proceeds of such cash. Such cash, together with any interest, dividends, or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto

22. Delivery of Distributions. Except as provided herein, distributions to holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective Proofs of Claim Filed by such holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Debtor or Liquidation Trustee, as applicable, after the date of any related Proof of Claim; or (iii) at the address reflected in the Schedules if no Proof of Claim is filed and the Debtor or Liquidation Trustee have not received a written notice of a change of address.

23. Undeliverable or Unclaimed Distributions. If the distribution to the holder of any claim is returned to the Liquidation Trustee as undeliverable, no further distribution shall be made to such holder unless and until the Liquidation Trustee is notified in writing of such holder's then current address, at which time such undelivered distribution shall be made to such holder within 90 days of receipt of such holder's then current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under § 347(b) of the Code and revert to the Liquidation Trust and returned by the Liquidation Trustee to the Liquidation Trust at the expiration of six (6) months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. Notwithstanding anything to the contrary contained in this Plan, nothing in this provision shall act as a bar to entry of a Final Decree Closing the Subchapter V Case. Any uncashed or undeliverable distributions reverted back the Liquidation Trust may be used for future distributions.

24. Setoff and Recoupment. From and after the Effective Date, the Liquidation Trustee may, to the extent permitted by § 553 of the Code or applicable non-bankruptcy law, set off against or recoup from any claim on which distributions are to be made, any Causes of Action of any nature whatsoever that the Liquidation Trustee may have against the holder of such claim; *provided*, *however*, that neither the failure to effect such setoff or recoupment nor the Allowance of any claim shall constitute a waiver or release of any right of setoff or recoupment, nor any other Cause of Action.

25. No Interest. Unless otherwise explicitly provided for in this Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall

not accrue or be paid on any Claims, and no holder of a claim shall be entitled to interest accruing on or after the Petition Date on any claim.

Dated: June 17, 2026.

DIGITAL DOLPHIN PRODUCTS, LLC,
a Nevada limited liability company:

By: DIGITAL DOLPHIN GLOBAL, LLC,
a Delaware limited liability company
Its: Managing Member

By: *_/s/ Joseph Hiller_*
Joseph Hiller
Its: Managing Member

PREPARED AND SUBMITTED:

*_/s/ Matthew C. Zirzow_*

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
MATTHEW C. ZIRZOW, ESQ., NBN 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170

Attorneys for Debtor

# EXHIBIT 1

**EXHIBIT 1 - LIQUIDATION ANALYSIS**
**Digital Dolphin Products, LLC**

**ASSETS**

| Item* | Projected Value |
|---|---|
| Cash | $150,000 |
| Causes of Action | Unknown |
| **Total:** | **$150,000** |

*Substantially all of the Debtor's assets are proposed to be sold for a total purchase price of $2.2 million, thus leaving only certain very limited assets remaining. Additionally, the Sale Motion proposes to pay CalPrivate Bank in full immediate at Closing, which the Debtor projects, assuming a closing of the sale in the first week of May 2026, to leave about $155,000 in remaining cash from the sale available for distribution.

**PAYMENT OF CLAIMS**

| Type of Claim | Claim Amount | Recovery Amount Under Plan | Recovery % Under Plan | Recovery Amount in Liquidation | Recovery % in Liquidation | Difference in Projected Recovery Under Plan |
|---|---|---|---|---|---|---|
| **Secured Claims** | | | | | | |
| Cl. 2: CalPrivate Bank* | $0 | $0 | 0.00% | $0 | 0% | 0% |
| Cl. 2: Other Misc. Secured* | $0 | $0 | 0% | $0 | 0% | 0% |
| **Administrative Claims** | | | | | | |
| Hypo. Ch. 7 Trustee 326 Commission | N/A | N/A | N/A | $10,750 | 100% | N/A |
| Hypo. Ch. 7 Prof'l Fees (Counsel) | N/A | N/A | N/A | $37,500 | 100% | N/A |
| Ch. 11 Administrative Claims** | $15,000 | $15,000 | 100% | $15,000 | 100% | 0% |
| **Priority Claims** | | | | | | |
| Priority Tax Claims (Unclassified) | $40,000 | $40,000 | 100% | $40,000 | 100% | 0% |
| Class 1 - Priority Non-Tax Claims (Est.) | $0 | $0 | 0% | $0 | 0% | 0% |
| **Class 4: General Unsecured Claims (Est.)** | $1,595,000 | $95,000 | 5.96% | $46,750 | 3% | 3.03% |
| **Class 5: Equity** | N/A | Cancelled | N/A | $0 | 0% | N/A |

**Explanatory Notes to Accompany Liquidation Analysis**

*Classes assumed to be vacant, and thus eliminated. CalPrivate is contemplated to be paid in full iommediately as of the closing of the sale, and thus prior to the Confirmation Hearing. The Debtor is not aware of any other secured creditors, and thus also anticpates that Class 3 will be vacant and also eliminated.

**Projected remainder to be paid after application of the retainer that the Debtor's counsel is holding.

# EXHIBIT A

**LIQUIDATION TRUST AGREEMENT**

**FOR THE**

**DIGITAL DOLPHIN PRODUCTS, LLC LIQUIDATION TRUST**

Dated as of June 23, 2026

This **LIQUIDATION TRUST AGREEMENT** (as it may be amended, supplemented, restated, or otherwise modified from time to time in accordance with its terms, this "Trust Agreement") is made and entered into as of the Effective Date (as defined below), by and between **DIGITAL DOLPHIN PRODUCTS, LLC**, a Nevada limited liability company, as debtor and debtor in possession (the "Debtor"), and **BRIAN D. SHAPIRO**, solely in his capacity as the liquidation trustee, and not in his individual capacity (together with any successor in such capacity, the "Liquidation Trustee"). The Debtor and the Liquidation Trustee are referred to herein collectively as the "Parties" and each individually as a "Party."

**RECITALS**

A. On February 23, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, subchapter V, of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and elected to proceed under subchapter V thereof, in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), thereby commencing the case captioned *In re Digital Dolphin Products, LLC*, Case No. 26-11119-abl (the "Chapter 11 Case"). Nathan F. Smith was appointed as the subchapter V trustee in the Chapter 11 Case (the "Subchapter V Trustee").

B. The Debtor filed its *Subchapter V Chapter 11 Plan of Liquidation of Digital Dolphin Products, LLC* (as it may be amended, modified, or supplemented in accordance with its terms, the "Plan") with the Bankruptcy Court. Capitalized terms used but not otherwise defined in this Trust Agreement have the meanings ascribed to them in the Plan.

C. By order entered on or about June [___], 2026 (the "Confirmation Order"), the Bankruptcy Court confirmed the Plan pursuant to §§§ 1129 and 1191 of the Bankruptcy Code.

D. The Plan provides for the establishment of the Digital Dolphin Products, LLC Liquidation Trust (the "Liquidation Trust") on the Effective Date for the purposes of, among other things, (i) liquidating the non-Cash Liquidation Trust Assets; (ii) prosecuting, settling, and otherwise resolving the Causes of Action; (iii) objecting to, reconciling, and resolving Disputed Claims; and (iv) making Distributions to the Beneficiaries in accordance with the Plan and this Trust Agreement, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary for, and consistent with, the liquidating purpose of the Liquidation Trust.

E. The Liquidation Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d), and as a "grantor trust" for federal income tax



BS 6-23-26 P.1-18

purposes pursuant to Treasury Regulation §§ 1.671-1 through 1.677-1, of which the Beneficiaries are the grantors and owners, and this Trust Agreement shall be construed and administered accordingly.

F. The Plan and the Confirmation Order authorize and direct the Parties to execute and deliver this Trust Agreement and to take the actions contemplated hereby.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION

1.1 **Incorporation of Plan Definitions.** This Trust Agreement is executed pursuant to, and incorporates by reference, the Plan and the Confirmation Order. Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Plan, and if not defined in the Plan, in the Confirmation Order, and if not defined in either, in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code apply herein.

1.2 **Certain Defined Terms.** In addition to terms defined elsewhere in this Trust Agreement, the following terms have the meanings set forth below:

**"Beneficiaries"** means the Holders of Allowed Claims entitled to Distributions under the Plan, in their capacity as beneficiaries of the Liquidation Trust, as more particularly described in Article III.

**"Cash"** means legal tender of the United States of America and equivalents thereof, including bank deposits, checks, and other similar items.

**"Distribution"** means any distribution of Cash or other Liquidation Trust Assets made to the Beneficiaries under the Plan and this Trust Agreement.

**"Effective Date"** has the meaning ascribed to it in the Plan, namely the first Business Day after fourteen (14) days following entry of the Confirmation Order, subject to any applicable stay as provided in the Plan.

**"Liquidation Trust Assets"** means, collectively, all collections; all Avoidance Actions that have not already been settled as of the Effective Date; any property of the Debtor or its estate as of the Effective Date (excepting and excluding therefrom any professional retainers paid to the Debtor's counsel); all other Causes of Action that are property of the Debtor or its estate as of the Effective Date; and all other assets of the



BS 6-23-26 P-2-18

Debtor and its estate to be liquidated through the Plan, in each case as and to the extent vested in the Liquidation Trust pursuant to the Plan and this Trust Agreement, together with all proceeds, income, and earnings thereon.

**"Liquidation Trust Interests"** means the beneficial interests in the Liquidation Trust held by the Beneficiaries, as described in Article III.

**"Trust Expenses"** means all costs, expenses, liabilities, and obligations incurred by the Liquidation Trustee (or by the Liquidation Trust) in connection with the administration of the Plan, the administration and liquidation of the Liquidation Trust Assets, the prosecution and resolution of Causes of Action, the reconciliation and resolution of Claims, the making of Distributions, and the maintenance and administration of the Liquidation Trust, including the fees and expenses of the Liquidation Trustee and the Trust Professionals, taxes, insurance, and bonding.

**"Trust Professionals"** means the attorneys, accountants, financial advisors, consultants, agents, and other professionals retained by the Liquidation Trustee pursuant to Section 4.6.

1.3 **Rules of Construction.** Unless the context otherwise requires: (a) the singular includes the plural and vice versa; (b) references to any agreement or document are to that agreement or document as amended, supplemented, or otherwise modified from time to time; (c) references to any Person include such Person's permitted successors and assigns; (d) the words "herein," "hereof," and "hereunder" refer to this Trust Agreement as a whole; (e) the word "including" means "including without limitation"; and (f) headings are for convenience only and do not affect interpretation.

## ARTICLE II

## ESTABLISHMENT AND PURPOSE OF THE LIQUIDATION TRUST

2.1 **Creation and Name.** On the Effective Date, the Liquidation Trust is hereby created and established pursuant to the Plan and the Confirmation Order, and shall be known as the "Digital Dolphin Products, LLC Liquidation Trust." The Liquidation Trust shall be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date. The Liquidation Trustee may conduct the affairs of the Liquidation Trust under that name or such variation thereof as the Liquidation Trustee deems appropriate.

2.2 **Purpose of the Liquidation Trust.** The Liquidation Trust is established for the primary purpose of liquidating and distributing the Liquidation Trust Assets in accordance with Treasury Regulation § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except only to the extent reasonably necessary for, and consistent with, the liquidating purpose of the Liquidation Trust. Without limiting the



BS 6-23-26 9:3-18

foregoing, the Liquidation Trust is established to (a) liquidate the non-Cash Liquidation Trust Assets; (b) prosecute, settle, compromise, abandon, or otherwise resolve the Causes of Action; (c) object to, reconcile, and resolve Disputed Claims; (d) make Distributions to Beneficiaries in accordance with the Plan and this Trust Agreement; and (e) maximize the recovery of the Liquidation Trust Assets for the benefit of the Beneficiaries.

2.3 **Transfer and Vesting of Liquidation Trust Assets.** On the Effective Date, pursuant to § 1141(b) of the Bankruptcy Code and the Plan, the Liquidation Trust Assets shall vest in the Liquidation Trust free and clear of all Liens, Claims, and interests, except as otherwise specifically provided in the Plan or the Confirmation Order. The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be deemed to occur automatically and without the need for any further act or instrument; *provided*, *however*, that the Liquidation Trustee may execute and the Debtor shall execute and deliver such further instruments and take such further actions as the Liquidation Trustee may reasonably request to confirm, perfect, or evidence the transfer and vesting of the Liquidation Trust Assets. For the avoidance of doubt, the assets sold pursuant to the Sale Order and the accompanying Asset Purchase Agreement, and any professional retainers paid to the Debtor's counsel, are not Liquidation Trust Assets and do not vest in the Liquidation Trust.

2.4 **Acceptance by Liquidation Trustee.** The Liquidation Trustee, by executing this Trust Agreement, accepts the trust created hereby and the Liquidation Trust Assets on behalf of the Beneficiaries, and agrees to observe and perform the duties and obligations of the Liquidation Trustee set forth in the Plan, the Confirmation Order, and this Trust Agreement, subject to the terms and conditions hereof and thereof.

2.5 **Abandonment of Burdensome or Valueless Assets.** Notwithstanding anything to the contrary herein, the Liquidation Trustee may abandon or otherwise decline to accept any non-Cash asset that the Liquidation Trustee believes, in good faith, has no value, or is burdensome or of inconsequential value, to the Liquidation Trust. Any such non-Cash asset that the Liquidation Trustee abandons or declines to accept shall not be property of the Liquidation Trust. Pursuant to § 554 of the Bankruptcy Code, the Plan constitutes a motion and notice sufficient to effectuate such abandonment, and no further notice or Bankruptcy Court filing shall be required.

2.6 **No Reversion to the Debtor.** In no event shall any part of the Liquidation Trust Assets revert to or be distributed to the Debtor or any of its equity holders on account of their equity interests, all of which interests are cancelled under the Plan and shall receive no recovery.

2.7 **Relationship to the Plan.** This Trust Agreement is intended to supplement, complement, and implement the Plan. In the event of any direct and irreconcilable conflict between the express terms of this Trust Agreement and the express terms of the Plan or the



6-23-26 9:48

Confirmation Order, the terms of the Plan and the Confirmation Order shall control; *provided* that as between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE III
## BENEFICIARIES AND LIQUIDATION TRUST INTERESTS

3.1 **Beneficiaries.** The Beneficiaries of the Liquidation Trust are the Holders of Allowed Claims entitled to Distributions under the Plan. Each Beneficiary's interest in the Liquidation Trust shall be determined in accordance with the classification and treatment of its Allowed Claim under the Plan and the distribution provisions of Article V. The Beneficiaries shall be bound by this Trust Agreement.

3.2 **Nature of Liquidation Trust Interests.** The Liquidation Trust Interests shall be uncertificated and shall be evidenced only by the records maintained by the Liquidation Trustee. The Liquidation Trust Interests shall be nontransferable and nonassignable except by will, intestate succession, or operation of law, or upon the death of the interest Holder. No Liquidation Trust Interest shall constitute a "security" within the meaning of any federal or state securities law, and the Liquidation Trustee shall not be required to register the Liquidation Trust Interests under any such law.

3.3 **Rights of Beneficiaries.** Each Beneficiary's entitlement is limited to the right to receive Distributions in accordance with the Plan and this Trust Agreement. A Beneficiary shall have no title to, right in, possession of, management of, or control over the Liquidation Trust Assets, except the right to receive Distributions as provided herein. The Liquidation Trust Interests do not entitle any Beneficiary to any voting or consent rights with respect to the management or administration of the Liquidation Trust, except as expressly provided in the Plan, the Confirmation Order, or this Trust Agreement.

3.4 **No Standing.** No Beneficiary shall have standing to direct or seek to direct the Liquidation Trustee to do or not to do any act, or to institute any action or proceeding at law or in equity against any Person, in connection with the Liquidation Trust Assets, except as expressly provided herein or in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court.

## ARTICLE IV
## THE LIQUIDATION TRUSTEE

4.1 **Appointment.** Brian D. Shapiro is hereby appointed as the Liquidation Trustee, effective as of the Effective Date, and accepts such appointment by executing this Trust Agreement. The Liquidation Trustee shall act in accordance with the Plan, the Confirmation Order, and this Trust Agreement and, in such capacity, shall have the same powers as the boards of



BS 6-23-26 9:5:18

members and officers of the Debtor, subject to the provisions of the Plan and this Trust Agreement. All bylaws, articles of organization, operating agreements, and related governance documents of the Debtor are deemed amended by the Plan to permit and authorize the foregoing. The Liquidation Trustee is the successor to the Debtor and its estate.

4.2 **Exclusive Trustee.** The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust and the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as for purposes of § 1123(b)(3)(B) of the Bankruptcy Code.

4.3 **Powers and Authority of the Liquidation Trustee.** Subject to the terms of the Plan, the Confirmation Order, and this Trust Agreement, the Liquidation Trustee shall have the authority and responsibility to take all actions reasonably necessary or appropriate to administer the Liquidation Trust and liquidate the Liquidation Trust Assets, without further order of the Bankruptcy Court except as otherwise expressly required, including the power to:

(a) receive, manage, invest, supervise, and protect the Liquidation Trust Assets;

(b) pay taxes and other obligations incurred or owed by the Liquidation Trust;

(c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of the Liquidation Trust Assets;

(d) investigate, prosecute, compromise, settle, abandon, or otherwise resolve the Causes of Action vested in the Liquidation Trust, in accordance with this Trust Agreement;

(e) object to, challenge, negotiate, compromise, settle, or otherwise resolve any Disputed Claims;

(f) dissolve the Debtor and any subsidiaries of the Debtor;

(g) recover any Liquidation Trust Assets for the benefit of the Liquidation Trust, including accounts receivable of the Debtor;

(h) abandon any Liquidation Trust Assets that the Liquidation Trustee deems to be burdensome or of inconsequential value;

(i) open, maintain, and close bank accounts and other accounts, and draw checks and make disbursements therefrom;

(j) calculate and make Distributions to Beneficiaries in accordance with the Plan and this Trust Agreement;

(k) establish, fund, maintain, and administer reserves, including the Disputed Claims reserve described in Section 5.5;

(l) purchase and maintain insurance and obtain any bond as the Liquidation Trustee deems appropriate;

(m) exercise all rights to conduct examinations and discovery pursuant to Bankruptcy Rule 2004, which rights vest in and continue for the benefit of the Liquidation Trust until its dissolution;

(n) request an expedited determination of taxes under § 505(b) of the Bankruptcy Code;

(o) execute, deliver, and perform such agreements, instruments, and other documents, and take such other actions, as may be necessary or appropriate to implement the Plan and this Trust Agreement and to carry out the powers and duties of the Liquidation Trustee; and

(p) undertake all administrative functions of the Plan, including the ultimate closing of the Chapter 11 Case.

4.4 **Investment of Cash.** The Liquidation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by § 345 of the Bankruptcy Code or in other prudent investments; *provided*, *however*, that such investments are limited to those permitted to be made by a liquidating trust within the meaning of Treasury Regulation § 301.7701-4(d), and consistent with applicable IRS guidelines, rulings, and other controlling authorities, including any limitations necessary to maintain the Liquidation Trust's status as a liquidating trust and grantor trust for federal income tax purposes.

4.5 **Books and Records.** On the Effective Date, the Liquidation Trustee shall take possession of all books, records, and files of the Debtor and its estate, and the Debtor shall transfer dominion and control over all such books and records, in whatever form, manner, or media they existed immediately prior to such transfer. The Liquidation Trustee shall provide for the retention and storage of such books, records, and files until the Liquidation Trustee determines that retention is no longer necessary or required. The Liquidation Trustee may abandon all such books and records upon the closing of the Chapter 11 Case, and, pursuant to § 554 of the Bankruptcy Code, the Plan constitutes a motion and notice sufficient to effectuate such abandonment without further notice or Bankruptcy Court filing.

4.6 **Retention and Compensation of Professionals.** The Liquidation Trustee may retain and compensate attorneys, accountants, financial advisors, and other professionals and consultants (the "Trust Professionals") to assist in the performance of the Liquidation Trustee's duties, on such terms (including on a contingency or hourly basis) as the Liquidation Trustee deems reasonable and appropriate, without further order of the Bankruptcy Court. Upon the appointment of the Liquidation Trustee, any professionals

BS 6-23-26 8:21 P

previously retained by the Debtor shall no longer be obligated or required to continue to represent the Debtor after the Effective Date (unless such professional has agreed in writing to continue such representation), and any such professional that elects to withdraw shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to the Chapter 11 Case. Confirmation of the Plan constitutes any necessary consent and Bankruptcy Court approval for such withdrawal.

4.7 **Compensation of the Liquidation Trustee.** The Liquidation Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of actual and necessary out-of-pocket expenses incurred in connection with the administration of the Liquidation Trust, payable from the Liquidation Trust Assets as a Trust Expense, without further order of the Bankruptcy Court except as otherwise ordered by the Bankruptcy Court. The amount of any reasonable fees and out-of-pocket expenses incurred by the Liquidation Trustee on or after the Effective Date (including taxes), and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Liquidation Trustee, shall be paid in Cash from the Liquidation Trust.

4.8 **Trust Expenses.** Subject to the provisions of this Trust Agreement, all Trust Expenses shall be charged against, and paid solely out of, the Liquidation Trust Assets. The Liquidation Trustee shall not be personally liable for any Trust Expense, and no Trust Expense shall be charged to or collectible from any Beneficiary personally.

4.9 **Reliance by Liquidation Trustee.** The Liquidation Trustee may rely, and shall be fully protected in acting or refraining from acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other document reasonably believed by the Liquidation Trustee to be genuine and to have been signed or presented by the proper party or parties, and may consult with, and rely upon the advice of, the Trust Professionals, and shall not be liable for any action taken or omitted in good faith in reliance thereon.

4.10 **No Bond Required.** The Liquidation Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court. In the event a bond is required, the cost thereof shall be a Trust Expense payable from the Liquidation Trust Assets.

## ARTICLE V
## DISTRIBUTIONS

5.1 **Distributions Generally.** Pursuant to § 1191(c) of the Bankruptcy Code, and unless otherwise ordered in the Confirmation Order, the Liquidation Trustee shall make all payments and Distributions required by the Plan and this Trust Agreement. The Liquidation Trustee shall be empowered to (a) effect all actions and execute all agreements,

BS 6-23-26 28:18

instruments, and other documents necessary to perform its duties hereunder; (b) make all Distributions contemplated hereby; (c) employ Trust Professionals; and (d) exercise such other powers as may be vested in the Liquidation Trustee by order of the Bankruptcy Court, the Plan, or this Trust Agreement, or as the Liquidation Trustee deems necessary and proper to implement the provisions hereof.

5.2 **Order of Distributions.** After the establishment of, and reservation for, the Disputed Claims reserve and reasonable reserves for Trust Expenses, the Liquidation Trustee shall apply and distribute the Liquidation Trust Assets in the following order of priority, in each case in accordance with and subject to the more detailed provisions of the Plan:

(a) first, to the payment in full, in Cash, of all Allowed Administrative Claims (including Allowed professional fee claims and the fees of the Subchapter V Trustee) in accordance with Article 3 of the Plan;

(b) second, to the payment in full, in Cash, of all Allowed Class 1 priority Claims under § 507(a) of the Bankruptcy Code (excluding priority tax Claims), and the Allowed Class 2 secured Claim of CalPrivate Bank to the extent not previously paid in connection with the Sale;

(c) third, to the payment of all Allowed priority tax Claims (excluding penalties) entitled to priority under § 507(a)(8) of the Bankruptcy Code, on a Pro Rata basis to the extent of available Cash, with the timing of any such Distributions within the sole and exclusive discretion of the Liquidation Trustee, but in any event no later than five (5) years after the Petition Date;

(d) fourth, to the Holders of Allowed Class 4 non-priority general unsecured Claims, on a Pro Rata basis, from any remaining Liquidation Trust Assets, with the timing of such Distributions in the Liquidation Trustee's sole and absolute discretion; and

(e) fifth, no Distribution shall be made on account of Class 5 equity interests, all of which are cancelled under the Plan.

For the avoidance of doubt, no junior class or Claim shall receive any Distribution until all senior Claims have been paid in full or otherwise reserved for in accordance with the Plan and this Trust Agreement.

5.3 **Timing of Distributions.** Except as otherwise required by the Plan, the Confirmation Order, or applicable law, the timing, amount, and frequency of Distributions shall be determined by the Liquidation Trustee in its reasonable discretion, taking into account the amount of Cash available, the status of the Causes of Action and Disputed Claims, the anticipated Trust Expenses, and the appropriate reserves. The Liquidation Trustee shall not be required to make any Distribution if, in its reasonable judgment, the costs of doing so would be disproportionate to the amount to be distributed.



6-23-26 9:18

5.4 **Method of Payment.** Unless otherwise expressly agreed in writing, payments of Cash under the Plan and this Trust Agreement shall be made by check drawn on a domestic bank, by ACH transfer, or by electronic wire. Whenever any payment, Distribution, filing, delivery, or notice to be made under the Plan or this Trust Agreement is due on a day other than a Business Day, such payment, Distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

5.5 **Disputed Claims Reserve.** Notwithstanding any other provision hereof, no payment or Distribution shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by the Plan. On any date that Distributions are to be made, the Liquidation Trustee shall deposit into one or more segregated accounts (the "Disputed Claims Reserve") Cash or property equal to one hundred percent (100%) of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim (but for the pendency of the dispute). The Liquidation Trustee shall also segregate any interest, dividends, or proceeds of such Cash, which shall be held in trust for the benefit of the Holders of such Disputed Claims pending determination of their entitlement thereto. To the extent a Disputed Claim becomes a Disallowed Claim, in whole or in part, the Cash reserved on account of the Disallowed portion shall become available for Distribution to other Beneficiaries in accordance with the Plan.

5.6 **Delivery of Distributions.** Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the respective Proofs of Claim filed by such Holders; (b) at the addresses set forth in any written notices of address change delivered to the Debtor or the Liquidation Trustee after the date of the related Proof of Claim; or (c) at the address reflected in the Schedules if no Proof of Claim is filed and no written notice of a change of address has been received.

5.7 **Undeliverable and Unclaimed Distributions.** If any Distribution is returned to the Liquidation Trustee as undeliverable, no further Distribution shall be made to such Holder unless and until the Liquidation Trustee is notified in writing of such Holder's then-current address, at which time such undelivered Distribution shall be made within ninety (90) days of receipt of such address or other necessary information; *provided* that any such undelivered Distribution shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code and shall revert to the Liquidation Trust at the expiration of six (6) months from the later of (a) the Effective Date and (b) the date of the initial attempted Distribution. Any uncashed or undeliverable Distribution that reverts to the Liquidation Trust may be used for future Distributions. Nothing in this Section shall act as a bar to entry of a Final Decree closing the Chapter 11 Case.

5.8 **Setoff and Recoupment.** From and after the Effective Date, the Liquidation Trustee may, to the extent permitted by § 553 of the Bankruptcy Code or applicable non-bankruptcy law,



BS 6-23-26 9:10 AM

set off against or recoup from any Claim on which Distributions are to be made, any Causes of Action of any nature that the Liquidation Trustee may have against the Holder of such Claim; *provided, however*, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment or any other Cause of Action.

5.9 **No Interest.** Unless otherwise explicitly provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

5.10 **Withholding and Reporting.** The Liquidation Trustee may withhold from any Distribution any amounts required to be withheld under any applicable federal, state, local, or foreign tax law, and may condition any Distribution on the recipient's provision of a properly completed IRS Form W-9 or applicable Form W-8, or other tax identification or documentation reasonably required by the Liquidation Trustee. Any amount so withheld shall be treated for all purposes as having been distributed to the applicable Beneficiary. The Liquidation Trustee shall comply with all withholding and reporting requirements imposed by any taxing authority.

## ARTICLE VI
## CAUSES OF ACTION

6.1 **Vesting of Causes of Action.** Except as otherwise provided in the Plan or the Confirmation Order, and in accordance with § 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action that the Debtor and its estate may hold against any Person shall vest in the Liquidation Trust on and after the Effective Date. No Causes of Action that have been released or exculpated under the Plan or any Final Order shall be transferred to the Liquidation Trust, and the Liquidation Trustee shall have no standing to pursue any such released or exculpated Causes of Action.

6.2 **Prosecution and Resolution.** From and after the Effective Date, the prosecution, settlement, compromise, abandonment, and resolution of all Causes of Action transferred to the Liquidation Trust shall be the sole and exclusive responsibility of the Liquidation Trustee, who shall have the exclusive right, power, and interest of the Debtor's estate to pursue, settle, or abandon such Causes of Action as the sole representative of and successor to the Debtor's estate pursuant to § 1123(b)(3) of the Bankruptcy Code, in its sole discretion and without further order of the Bankruptcy Court, in any court or tribunal, including by adversary proceeding in the Chapter 11 Case. Proceeds recovered from any Cause of Action shall be deposited into the Liquidation Trust and distributed by the Liquidation Trustee in accordance with the Plan and this Trust Agreement.

6-23-26 P.11-18

6.3 **Preservation of Causes of Action.** Unless a Cause of Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtor and its estate expressly reserve such Cause of Action for later adjudication or administration by the Liquidation Trustee, including Causes of Action not specifically identified or described in the Plan or elsewhere, or of which the Debtor or the Subchapter V Trustee may presently be unaware. Accordingly, no preclusion doctrine, including res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon or after entry of the Confirmation Order or the occurrence of the Effective Date. No Person may rely on the absence of a specific reference to any Cause of Action in the Plan or this Trust Agreement as an indication that the Liquidation Trustee will not pursue such Cause of Action.

6.4 **Rights to Investigate.** All rights to conduct examinations and discovery pursuant to Bankruptcy Rule 2004 held by the Debtor prior to the Effective Date shall vest in the Liquidation Trust and shall continue until the dissolution of the Liquidation Trust.

## ARTICLE VII
## TAX MATTERS

7.1 **Federal Income Tax Treatment.** For federal income tax purposes, the Liquidation Trust is intended to be classified as a liquidating trust under Treasury Regulation § 301.7701-4(d) and as a grantor trust owned by the Beneficiaries. Accordingly, the Beneficiaries shall be treated as if they had received a distribution from the Debtor's estate of an undivided interest in each of the Liquidation Trust Assets (to the extent of the value of their respective shares in the applicable assets) and had then contributed such interests to the Liquidation Trust, and the Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust. All Parties and Beneficiaries shall report consistently with such treatment for all federal, state, and local income tax purposes.

7.2 **Tax Returns and Reporting.** The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a) and in accordance with the Plan. For each taxable year in which Distributions are made, the Liquidation Trust shall send to each Beneficiary a separate statement setting forth such Beneficiary's share of items of income, gain, loss, deduction, or credit, and each Beneficiary shall report such items on its federal income tax return; *provided* that no such statement need be sent to any Class that is not expected to receive any Distribution. The Liquidation Trust's taxable income, gain, loss, deduction, and credit shall be allocated to the Beneficiaries in accordance with their relative beneficial interests. The Liquidation Trustee shall also file any other statements, returns, or disclosures relating to the

BS 6-25-26 7-12-18

Liquidation Trust required by any governmental unit, and shall be responsible for filing all federal, state, and local tax returns for the Debtor and the Liquidation Trust.

7.3 **Valuation of Assets.** As soon as practicable after the Effective Date, the Liquidation Trustee shall make a good-faith valuation of the Liquidation Trust Assets. Such valuation shall be used consistently by all Parties and Beneficiaries for all federal income tax purposes, including for determining the tax basis of the Liquidation Trust Assets and the amounts of the deemed distributions and contributions described in Section 7.1.

7.4 **Tax Obligations.** The Liquidation Trust shall be responsible for the payment of all Allowed tax obligations of the Debtor and any taxes imposed on the Liquidation Trust. The Liquidation Trustee may request an expedited determination of taxes of the Debtor or the Liquidation Trust under § 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtor and the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.

7.5 **Withholding.** The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidation Trustee shall be subject to any such withholding and reporting requirements, as further provided in Section 5.10.

## ARTICLE VIII

## LIABILITY, EXCULPATION, AND INDEMNIFICATION

8.1 **Limitation of Liability.** No recourse shall ever be had, directly or indirectly, against the Liquidation Trustee, or his professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings, by virtue of any statute, or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Liquidation Trustee under the Plan or this Trust Agreement, nor by reason of the creation of any indebtedness by the Liquidation Trust or the Liquidation Trustee under the Plan or this Trust Agreement. All such liabilities shall be enforceable only against, and satisfied only out of, the Liquidation Trust Assets. The Liquidation Trustee and his agents shall not be deemed to be the agents of any Holder of a Claim in connection with Distributions made under the Plan or this Trust Agreement.

8.2 **Exculpation.** The Liquidation Trustee, and his professionals, representatives, agents, successors, and assigns, shall not be liable for any act taken or omitted to be taken hereunder in good faith and in the exercise of their sound judgment; *provided*, *however*, that this Section shall not apply to any specific act or omission as to which the Bankruptcy Court determines, in a Final Order, that such action or inaction was grossly negligent or the result of willful misconduct. No such Person shall be liable for the act or omission of any other Person.

BS 6-23-26 P. 13-18

8.3 **Indemnification.** To the fullest extent permitted by applicable law, the Liquidation Trust shall indemnify, defend, and hold harmless the Liquidation Trustee, and his professionals, representatives, agents, successors, and assigns (each, an "Indemnified Person"), from and against any and all losses, claims, damages, liabilities, costs, and expenses (including reasonable attorneys' fees and expenses) arising out of or in connection with the performance of their duties under the Plan and this Trust Agreement, except to the extent such losses are determined by Final Order to have resulted from such Indemnified Person's gross negligence or willful misconduct. Any amounts payable in respect of such indemnification shall be a Trust Expense payable solely from the Liquidation Trust Assets. The foregoing indemnification shall survive the termination of this Trust Agreement, the dissolution of the Liquidation Trust, and the death, resignation, or removal of the Liquidation Trustee.

8.4 **No Personal Liability of Beneficiaries.** No Beneficiary shall have any personal liability for any Trust Expense, liability, or obligation of the Liquidation Trust, and recourse for any such Trust Expense, liability, or obligation shall be had solely against the Liquidation Trust Assets.

## ARTICLE IX
## RESIGNATION, REMOVAL, AND SUCCESSOR TRUSTEE

9.1 **Resignation.** The Liquidation Trustee may resign by giving not less than thirty (30) days' prior written notice to the Bankruptcy Court and the Office of the United States Trustee. Such resignation shall become effective on the later of (a) the date specified in the notice and (b) the effective date of the appointment of a successor Liquidation Trustee and such successor's acceptance of the trust.

9.2 **Removal.** The Liquidation Trustee may be removed for cause by the Bankruptcy Court after notice and a hearing, upon a motion commenced by any creditor holding an Allowed Claim or other right of payment under the Plan.

9.3 **Appointment of Successor.** In the event of the resignation, removal, death, or incapacity of the Liquidation Trustee, the Office of the United States Trustee shall designate another Person or entity to serve as successor Liquidation Trustee. Upon such designation, and without any further act or need for an order of the Bankruptcy Court, the successor Liquidation Trustee shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor Liquidation Trustee; *provided*, *however*, that the Liquidation Trustee shall be deemed removed on the date the Chapter 11 Case is closed, and no successor thereto shall be designated.

9.4 **Vesting in Successor.** Every successor Liquidation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Bankruptcy Court and to the predecessor

BS 6-23-26 R.14-18

Liquidation Trustee an instrument accepting such appointment, and thereupon such successor, without any further act, deed, or conveyance, shall become vested with all the rights, powers, trusts, and duties of the predecessor. The predecessor Liquidation Trustee (or its estate) shall execute and deliver such instruments and take such other actions as the successor may reasonably request to effect the transfer.

## ARTICLE X

## TERM, TERMINATION, AND DISSOLUTION

10.1 **Term of the Liquidation Trust.** The Liquidation Trust shall become effective on the Effective Date. The Liquidation Trustee shall be discharged and the Liquidation Trust shall terminate at such time as (a) all of the Liquidation Trust Assets have been liquidated, (b) all duties and obligations of the Liquidation Trustee under this Trust Agreement have been fulfilled, and (c) the Chapter 11 Case has been closed. Consistent with the requirements applicable to a liquidating trust under Treasury Regulation § 301.7701-4(d) and applicable IRS guidance, the Liquidation Trust shall have a term not to exceed five (5) years from the Effective Date; *provided*, *however*, that the Liquidation Trustee may, prior to the expiration of such term, extend the term of the Liquidation Trust for one or more finite periods if such extension is necessary to the liquidating purpose of the Liquidation Trust, subject to the receipt of an opinion of counsel or a favorable ruling from the IRS (to the extent the Liquidation Trustee deems either necessary or appropriate) that such extension would not adversely affect the status of the Liquidation Trust as a liquidating trust and grantor trust for federal income tax purposes, and to the extent required, the approval of the Bankruptcy Court.

10.2 **Winding Up and Final Distribution.** Upon the satisfaction of the conditions set forth in Section 10.1, the Liquidation Trustee shall (a) liquidate or abandon any remaining non-Cash Liquidation Trust Assets; (b) pay or reserve for all remaining Trust Expenses and tax obligations; (c) make a final Distribution of all remaining Cash to the Beneficiaries in accordance with Article V; and (d) take such other actions as are necessary or appropriate to wind up the affairs of the Liquidation Trust.

10.3 **Dissolution of the Debtor.** The Liquidation Trustee is authorized to dissolve the Debtor and any subsidiaries of the Debtor, and to take all actions and execute all documents necessary or appropriate to effect such dissolution, without further order of the Bankruptcy Court.

10.4 **No Reversion Upon Termination.** Upon termination and dissolution of the Liquidation Trust, no portion of the Liquidation Trust Assets shall revert to the Debtor or any of its former equity holders.

BS 6-23-26 9:15-19

## ARTICLE XI
## REPORTING AND ACCOUNTS

11.1 **Quarterly Reports.** No later than ninety (90) days after the end of the first full month following the Effective Date, and on a quarterly basis thereafter until all Cash in the Liquidation Trust has been provided for Distribution in accordance with the Plan, the Liquidation Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all Distributions made by the Liquidation Trustee under the Plan through each applicable reporting period.

11.2 **Objections to and Resolution of Claims.** The Liquidation Trustee shall have the right to file objections to Claims after the Effective Date. All objections shall be litigated to entry of a Final Order; *provided*, *however*, that only the Liquidation Trustee shall have authority to compromise, settle, otherwise resolve, or withdraw any objection, in each case without further approval of the Bankruptcy Court.

11.3 **Maintenance of Records.** The Liquidation Trustee shall maintain books and records relating to the Liquidation Trust Assets, the management thereof, and all Distributions, in such detail and for such period of time as may be necessary to enable the Liquidation Trustee to make full and proper accountings and to comply with applicable law. Nothing herein requires the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, except as otherwise expressly required by the Plan, the Confirmation Order, this Trust Agreement, or applicable law.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1 **Amendment.** This Trust Agreement may be amended, supplemented, or modified by the Liquidation Trustee from time to time as necessary or appropriate to clarify any ambiguity, to correct any defect or inconsistency, or to facilitate the administration of the Liquidation Trust; *provided* that no such amendment, supplement, or modification shall (a) be inconsistent with the Plan or the Confirmation Order, (b) adversely affect the rights of the Beneficiaries in any material respect, or (c) cause the Liquidation Trust to fail to qualify as a liquidating trust and grantor trust for federal income tax purposes, in each case without, to the extent required, the approval of the Bankruptcy Court.

12.2 **Conflict with the Plan.** In the event of any direct and irreconcilable conflict between the express terms of this Trust Agreement and the express terms of the Plan or the Confirmation Order, the terms of the Plan and the Confirmation Order shall govern and control as provided in Section 2.7.

BS 6-25-26 P. 16-18

12.3 **Governing Law.** Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or other federal law applies, this Trust Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada, without giving effect to any principles of conflicts of law that would require the application of the law of another jurisdiction.

12.4 **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date, or the termination of the Liquidation Trust, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of or related to the Liquidation Trust, this Trust Agreement, the Plan, and the Chapter 11 Case, as set forth in the Plan and the Confirmation Order.

12.5 **Severability.** If any provision of this Trust Agreement is determined to be invalid or unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provision hereof, and the remaining provisions shall be construed and enforced as if such invalid or unenforceable provision were omitted, so long as the economic and legal substance of the transactions contemplated hereby is not affected in a manner materially adverse to any Party or Beneficiary.

12.6 **Binding Effect.** This Trust Agreement shall be binding upon, and shall inure to the benefit of, the Parties and their respective successors and permitted assigns, and shall be binding upon all Beneficiaries and their respective successors and permitted assigns.

12.7 **No Third-Party Beneficiaries.** Except for the Beneficiaries and the Indemnified Persons, nothing in this Trust Agreement, express or implied, is intended to or shall confer upon any Person any right, benefit, or remedy of any nature whatsoever under or by reason of this Trust Agreement.

12.8 **Notices.** Any notice or other communication required or permitted under this Trust Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand, by nationally recognized overnight courier, or by certified mail (return receipt requested), or when sent by electronic mail with confirmation of transmission, to the Liquidation Trustee at the address designated by the Liquidation Trustee by notice filed with the Bankruptcy Court, and to any Beneficiary at the address determined under Section 5.6.

12.9 **Counterparts; Electronic Signatures.** This Trust Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Signatures delivered by facsimile, electronic mail (including in PDF format), or other electronic means shall be deemed original signatures for all purposes.

12.10 **Headings.** The headings and captions used in this Trust Agreement are for convenience of reference only and shall not affect the construction or interpretation of any provision hereof.

12.11 **Entire Agreement.** This Trust Agreement, together with the Plan and the Confirmation Order, constitutes the entire agreement and understanding among the Parties with respect to the subject matter hereof and supersedes all prior discussions, agreements, and documents with respect thereto.

12.12 **Effectiveness.** This Trust Agreement shall become effective upon its execution by the Parties and the occurrence of the Effective Date.

**IN WITNESS WHEREOF**, the Parties have executed this Trust Agreement as of the Effective Date.

**DEBTOR:**

**DIGITAL DOLPHIN PRODUCTS, LLC,**
**a Nevada limited liability company,**
**as Debtor and Debtor in Possession**

By: Digital Dolphin Global, LLC,
a Delaware limited liability company
Its: Managing Member

By: ________________________________
Joseph Hiller
Its: Managing Member

**LIQUIDATION TRUSTEE:**

________________________________
BRIAN D. SHAPIRO,
solely in his capacity as Liquidation Trustee and not in his individual capacity

12.10 **Headings.** The headings and captions used in this Trust Agreement are for convenience of reference only and shall not affect the construction or interpretation of any provision hereof.

12.11 **Entire Agreement.** This Trust Agreement, together with the Plan and the Confirmation Order, constitutes the entire agreement and understanding among the Parties with respect to the subject matter hereof and supersedes all prior discussions, agreements, and documents with respect thereto.

12.12 **Effectiveness.** This Trust Agreement shall become effective upon its execution by the Parties and the occurrence of the Effective Date.

**IN WITNESS WHEREOF**, the Parties have executed this Trust Agreement as of the Effective Date.

**DEBTOR:**

**DIGITAL DOLPHIN PRODUCTS, LLC,**
**a Nevada limited liability company,**
**as Debtor and Debtor in Possession**

By: Digital Dolphin Global, LLC,
a Delaware limited liability company
Its: Managing Member

By: ______________________________
Joseph Hiller
Its: Managing Member

**LIQUIDATION TRUSTEE:**

______________________________
BRIAN D. SHAPIRO,
solely in his capacity as Liquidation Trustee and not in his individual capacity